**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| LAUREN E. WISSMAN, | : | |
|     **Plaintiff,** | : | |
| | : | |
| **v.** | : | CIVIL ACTION NO. 23-CV-3153 |
| | : | |
| PGM REAL ESTATE LLC, | : | |
| PROPERTY MANAGEMENT, *et al.*, | : | |
|     **Defendants.** | : | |

<u>**MEMORANDUM**</u>

**BARTLE, J.**                                                  **OCTOBER 4, 2023**

Plaintiff Lauren E. Wissman initiated this civil action by filing a *pro se* Complaint raising various claims relating to her housing.  Wissman seeks leave to proceed *in forma pauperis*.  For the following reasons, the Court will grant Wissman leave to proceed *in forma pauperis* and dismiss the Complaint without prejudice.  Wissman will be given an opportunity to file an amended complaint.

## I.     FACTUAL ALLEGATIONS[1]

Wissman's Complaint is lengthy and disjointed, making the allegations and claims difficult to discern.  Named as Defendants are PGM Real Estate LLC, a property management company ("PGM"), and its employees Joe Edwards, Jason Santora, Dan Boyes, Jamie Wheeler, April Landis, and Justin Gail.  Wissman also names John and Jane Doe employees of PGM, as well as Anthony Kates, the property owner.

Wissman has resided at 719 Strickersville Road, Landenberg, Pennsylvania, since April 2019 with her daughter, who was three years old at the time of the filing of the Complaint.

---

[1] The facts set forth in this Memorandum are taken from Wissman's Complaint (ECF No. 2).  The Court adopts the pagination supplied by the CM/ECF docketing system.

(Compl. at 1.)  Wissman was due to give birth on or before July 28, 2023.  (*Id.*)[2]  She is a

participant of "the fair housing choice voucher" through Chester County and rented the property

on Strickersville Road.  (*Id.*)

On March 22, 2023, Wissman received notice from PGM directing her to vacate the

property by May 31, 2023.  (*Id.* at 2, 16.)  According to Wissman, Defendants April Landis and

Justin Gail of PGM then initiated an eviction proceeding on June 7, 2023.  *See PGM Real Estate*

*Associates, LLC v. Wissman*, MJ-15305-LT-0000043-2023 (Chester Cnty.).  The publicly

available state court dockets reflect that Wissman filed a cross complaint to the eviction matter.

*See Wissman v. PGM Real Estate Associates, LLC*, MJ-15305-CV-0000076-2023 (Chester

Cnty.)  The dockets reflect that judgment was entered against Wissman in each matter, and that

she appealed both cases.[3]

Wissman alleges that Defendants intentionally failed to make required repairs to the

rental property, causing her to fail two state inspections.  (Compl. at 2-3.)  Wissman first failed a

state inspection on November 3, 2022, and contends that "for two years now her dwelling has

paint chips fallen from the ceiling in her bedroom.  The living room.  The kitchen.  The hallway.

It appears the paint chipping away appears to be copper paint chips."  (*Id.* at 21.)  She failed a

---

[2] Wissman describes herself as follows: "[S]he is a victim of rape.  She suffers from (PTSD), Depression, and Bipolar disorder, she a recovering drug attic [sic], undergoes therapy, and Regularly see a doctor.  She is 7 months pregnant and as a direct result of Defendant's PGM Real Estate & Associate deceitful and deceptive practices she is now homeless. . . ."  (Compl. at 5.)

[3] Wissman also alleges that after receiving the notice to vacate on March 22, 2023 by certified mail, she logged into her PGM web portal which indicated that the lease was terminated on October 26, 2022.  (Compl. at 16.)  Wissman further claims that "upon further review" of the web portal account listed the lease termination date as February 1, 2023.  (*Id.*)  Wissman asserts that "Defendant's deceitful, deceptive practices are attempting to cover up A crucial & critical date of 10/26/23 without due process of law, in violation of the Fair Housing Act."  (*Id.*)

second inspection on November 4, 2022.  (*Id.* at 33.)  She avers that Defendants took pictures of the property rather than performing the needed repairs.  (*Id.* at 3.)  In particular, Wissman alleges that PGM failed to fix a broken bedroom door and failed to install carbon monoxide and smoke detectors.  (*Id.* at 31.)  She purchased carbon monoxide and smoke detectors, a shower head, and toilet seat, at her own expense.  (*Id.*)  According to Wissman, Defendant PGM had a "monopoly scheme to receive direct payment from the Chester County, Housing Authority without fulfilling the obligations of the Tenant Lease."  (*Id.* at 6, 31-32.)

Wissman also claims that PGM "harassed, stalked, intimidated, used both verbal, and physical intimidation against plaintiff/victim in her dwelling, enjoyment of peace, to illegally terminate victim lease."  (*Id.* at 4.)  She maintains that Defendant Joe Edwards, as well as John Doe maintenance employees of PGM, entered her dwelling without "notice, knocking, calling, email, random men just entering her dwelling" while she was home causing fear.  (*Id.*)  Specifically, she alleges that Defendant Edwards entered her home unannounced and made "himself available for sexual advancements/sugar Daddy advancements" while giving her his phone number on November 3, 2022.  (*Id.* at 4-5, 21-22.)  It is unclear whether Defendant Edwards entered Wissman's home during or after the state inspection that occurred that same day.  It appears that he sought to patch miscellaneous holes in the bathroom as requested by the state inspectors.  (*Id.* at 22, 30-31.)  Wissman avers that Defendant Edwards failed to paint over the wall patch and did not fix the chipping ceiling paint.  (*Id.*)  While in Wissman's home, Defendant Edwards is alleged to have asked Wissman personal questions and interfered with Wissman's conversations with her fiancé, which made Wissman uncomfortable.  (*Id.*)  Wissman further alleges that Defendants Edwards "arrived next day; at the same time, she scheduled her uber Ride 3 Pm. appointment," parked his car in the driveway, waited for Wissman to

acknowledge him, and left when she did not.  (*Id.*)  According to Wissman, Defendant Edwards

again entered her home on December 10, 2022 unannounced and unsuccessfully attempted to fix

her dryer.  (*Id.* at 23.)  She contends that he "continued to be personal, while repairing the light

in hallway, he continued ask personal questions, in fact, he stood on ladder staring plaintiff down

undressing her with his eyes making victim very uncomfortable knowing he was done."  (*Id.*)

Wissman directed her fiancé to "say something" but he did not "want things to be

misinterpreted" and he sent Defendant Edwards a text message "respectfully to avoid any

misinterpretation."  (*Id.*)

Wissman avers that she first was introduced to Defendant Anthony Kates on March 22,

2023, upon her return home from the post office when she obtained the notice to evict.  (*Id.* at 9,

17.)  Wissman contends that Defendant Kates introduced himself as the property owner, and

admitted that he had been using the garage for his personal storage.  (*Id.*)  Wissman claims that

she previously noticed on November 30, 2022 that personal property she stored in the garage was

missing and that she notified PGM of the missing property, but never received a response from

PGM, nor had she been told to remove the property.  (*Id.*)  Wissman alleges that Defendant

Kates informed her during their initial meeting he "threw everything away when I bought the

property."  (*Id.*)  Wissman requested reimbursement from Defendant Kates for the missing items.

(*Id.* at 17-18.)  Wissman also informed Defendant Kates of the eviction notice; he claimed that

he did not authorize the notice.  (*Id.* at 18.)  Wissman further claims that Defendant Kates acted

inappropriately during this meeting, "speaking her seductive, completely inappropriate" and

asked for her phone number.  (*Id.* at 19-20.)

Wissman also contends, however, that Kates's current address is 715 Strickersville Road,

where he has lived in the apartment below Wissman since November 2021 with his wife and

children.  (*Id.* at 9, 26, 34.)  She avers that "for several months she saw Defendant Anthony

Kate's in various vehicles parking on property, she assumed was relative of neighbors,

Defendant would park directly across her kitchen window drinking beers inside his vehicle

waiving at victim.  Defendant would pee near garage.  She has witnessed him in the Garage

drinking sitting on her weight bench stool."  (*Id.* at 26.)  Wissman alleges that "Defendant

Anthony Kate's been drinking on property for 1 year now" and has been stalking Wissman.  (*Id.*

at 27, 34.)  She claims that Defendants Joe Edwards and Anthony Kates have "been stalking her

regularly" and that she has seen their trucks "circling her dwelling for several months."  (*Id.* at

27.)[4]

Wissman claims that she spoke with Defendants Justin Gail and Dan Boyes of PGM on

March 23, 2023, who informed her that "we do not rent to Tenants who do not allow us to walk

in your Apartment without notice.  We do not rent to tenants who complain of such entry.  We

Only rent to tenants who waive 24-Hour notice.  Please vacate by 5/31/23."  (*Id.* at 22-23.)

According to Wissman, she has maintained a working and updated phone number and she

generally avers that "she never received a call or voicemail."  (*Id.* at 38.)  Wissman also contends

that Defendant Edwards falsely reported to PGM that she had refused entry into her dwelling to

make repairs, and that Defendants "simply walk in her dwelling without notice each time."  (*Id.*

---

[4] Wissman also alleges that her fiancé performed extensive yard work at the property during the
four years that Wissman lived there and purchased a lawnmower to do so, although it was
PGM's responsibility.  (*See* Compl. at 28-30.)  Additionally, Wissman claims that Defendant
Kates shut the water off at the property on the morning of April 25, 2023 when he was making
repairs, but failed to turn the water back on when he left that evening.  (*Id.* at 38.)  The water was
turned on after Wissman reported it to PGM, but she alleges that Defendant Kates called her
numerous times to harass her about the situation.  (*Id.* at 38-39.)  She alleges that "Defendant
Anthony Kate's intent is clear, he been trying to Find a way to indirectly message victim, he
evicted her, now he wants play Romeo in subtle way, this harassment, and discrimination is
unlawful."  (*Id.* at 39.)

at 23.)  Wissman claims that "the illicit, illegal entries into her dwelling have Been nonstop since Defendant Anthony Kate's became new property owner."  (*Id.*)  She further alleges that on March 26, 2023, Defendant Jason Santora and a John Doe maintenance worker "maliciously storm Her dwelling" unannounced, that she felt intimidated, and that she had to keep her fiancé from intervening.  (*Id.* at 24-25.)  She contends that Defendants Santora and John Doe merely inspected and took pictures, but performed no repairs, and informed her that any repairs would be completed by Defendant Edwards.  (*Id.* at 25.)

Wissman purchased cameras at her own expense in December 2022 because she felt unsafe due to the unannounced entries by various Defendants.  (*Id.* at 26.)  Wissman further alleges that on April 1, 2023, PGM sent her an itemized list of repairs she needed to complete, and this was unlawful.  (*Id.* at 6, 25.)

Wissman asserts that Defendants' actions violated numerous federal and state statutes, as well as the terms of the lease.  (*Id.* at 34-37, 40-43.)  She also alleges that she "is about to lose her Section. 8. Voucher because she exhausted her (60) day extension in finding a new rental."  (*Id.* at 3.)  She seeks declaratory and injunctive relief, as well as damages.  (*Id.* at 43-45.)

## II.    STANDARD OF REVIEW

The Court will grant Wissman leave to proceed *in forma pauperis* because it appears that she is incapable of paying the fees to commence this civil action.  Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss the Complaint if it fails to state a claim. The Court must determine whether the Complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted).  "'At this early stage of the litigation,' '[the Court will] accept the facts alleged in [the *pro se*] complaint as true,' 'draw[] all reasonable inferences in [the

plaintiff's] favor,' and 'ask only whether [that] complaint, liberally construed, . . . contains facts sufficient to state a plausible [] claim.'" *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (quoting *Perez v. Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir. 2015)).  Conclusory allegations do not suffice.  *Iqbal*, 556 U.S. at 678.

Because Wissman is proceeding *pro se*, the Court construes her allegations liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).  However, "'pro se litigants still must allege sufficient facts in their complaints to support a claim.'"  *Id.*  (quoting *Mala*, 704 F.3d at 245).  An unrepresented litigant "'cannot flout procedural rules - they must abide by the same rules that apply to all other litigants.'"  *Id.*

## III.   DISCUSSION

Wissman's Complaint is lengthy, rambling, and disjointed, referencing several federal and state statutes as the basis for her claims.[5]  Nonetheless, the Court understands Wissman to allege that Defendants violated her constitutional rights, as well as her rights under the Fair Housing Act ("FHA") and the Americans with Disabilities Act ("ADA").  She also seeks to present numerous claims under state law.

### A.   Constitutional Claims

The vehicle by which federal constitutional claims may be brought in federal court is 42 U.S.C. § 1983.  "Section 1983 is not a source of substantive rights," but is merely a means

---

[5] The Court notes that a "'passing reference' to jurisprudential precepts without more does not bring that issue before the Court in that it provides no basis for a ruling one way or the other." *Campbell v. LVNV Finding, LLC and Resurgent Capital Servs.*, No. 21-5388, 2022 WL 6172286, at *7 (E.D. Pa. Oct. 7, 2022) (citing *Laborers' Int'l Union of N. Am., AFL-CIO v. Foster Wheeler Energy Corp.*, 26 F.3d 375, 398 (3d Cir. 1994)); *Alexis v. Sessions*, No. 18-2099, 2018 WL 5077899, at *2 n.1 (D.N.J. Oct. 18, 2018).

through which "to vindicate violations of federal law committed by state actors." *See Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002). "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). "The color of state law element is a threshold issue; there is no liability under § 1983 for those not acting under color of law." *Groman v. Twp. of Manalapan*, 47 F .3d 628, 638 (3d Cir. 1995).

Whether a private entity is acting under color of state law – *i.e.*, whether the defendant is a state actor subject to liability under § 1983 – depends on whether there is "such a close nexus between the State and the challenged action' that seemingly private behavior may be fairly treated as that of the State itself." *Leshko v. Servis*, 423 F.3d 337, 339 (3d Cir. 2005) (internal quotations omitted). "To answer that question, [the United States Court of Appeals for the Third Circuit has] outlined three broad tests generated by Supreme Court jurisprudence to determine whether state action exists: (1) whether the private entity has exercised powers that are traditionally the exclusive prerogative of the state; (2) whether the private party has acted with the help of or in concert with state officials; and (3) whether the state has so far insinuated itself into a position of interdependence with the acting party that it must be recognized as a joint participant in the challenged activity." *Kach v. Hose*, 589 F.3d 626, 646 (3d Cir. 2009) (internal quotations and alteration omitted).

Wissman has not alleged facts to support a plausible conclusion that any of the named Defendants meet any of the foregoing tests, and nothing in the Complaint suggests any factual or legal basis for concluding that the Defendants are state actors who could be held liable under § 1983. *See, e.g., Dejesus v. Vicky*, No. 21-1403, 2021 WL 1546228, at *3-4 (E.D. Pa. Apr. 20,

2021) (finding that employee of apartment complex and rental company itself were private individuals or entities involved in property rental and not state actors for purposes of constitutional claims) (citing cases); *Hussein v. New Jersey*, 403 F. App'x 712, 716 (3d Cir. 2010) (*per curiam*) (affirming dismissal of constitutional claims against landlord because landlord was not a state actor).  Accordingly, Wissman has not stated a plausible constitutional claim against any named Defendant and any § 1983 claims will be dismissed without prejudice.

### B.    Fair Housing Act Claims

The FHA prohibits discrimination on the basis of race, color, religion, sex, familial status, or national origin, in a variety of real estate-related transactions.  *See* 42 U.S.C. § 3604.  The FHA's prohibition of discrimination "can be violated by either intentional discrimination or if a practice has a disparate impact on a protected class."  *White v. Barbe*, 767 F. App'x 332, 334 (3d Cir. 2019) (*per curiam*) (citing *Mt. Holly Gardens Citizens in Action, Inc. v. Twp. of Mount Holly*, 658 F.3d 375, 381 (3d Cir. 2011)); *El v. People's Emergency Ctr.*, 438 F. Supp. 3d 283, 289-90 (E.D. Pa. 2020).  Additionally, "[i]n 1988, Congress extended the Fair Housing Act to protect against discrimination on the basis of disability."  *Revock v. Cowpet Bay W. Condo. Ass'n*, 853 F.3d 96, 104 (3d Cir. 2017) (citing *City of Edmonds v. Oxford House, Inc.*, 514 U.S. 725, 728 n.1 (1995); Fair Housing Amendments Act of 1988, Pub. L. No. 100-430, 102 Stat. 1619 (1988)).  Those amendments, the FHAA, make it unlawful "[t]o discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of

services or facilities in connection with such dwelling, because of a handicap of that person."  42 U.S.C. § 3604(f)(2)(A).[6]

The FHA also makes it "unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed . . . any right granted or protected by section . . . 3604 . . . of this title."  42 U.S.C. § 3617.  "A Section 3617 interference claim requires proof of three elements: (1) that the plaintiff exercised or enjoyed any right granted or protected by [the FHA]; (2) that the defendant's conduct constituted interference; and (3) a causal connection existed between the exercise or enjoyment of the right and the defendant's conduct."  *Revock*, 853 F.3d at 112-13 (internal quotations and footnote omitted).  Interference under § 3617 may consist of harassment, provided that it is "sufficiently severe or pervasive" as to create a hostile environment."  *Id.* at 113.  The regulations associated with § 3617 make clear that the section prohibits acts directed at individuals "because of" their membership in a protected class.  24 C.F.R. § 100.400(c)(2) (listing prohibited conduct to include "[t]hreatening, intimidating or interfering with persons in their enjoyment of a dwelling because of the race, color, religion, sex, handicap, familial status, or national origin of such persons").  "Harassment that intrudes upon the 'well-being, tranquility, and privacy of the home' is considered particularly invasive."  *Revock*, 853 F.3d at 112 (quoting *Firsby v. Schultz*, 487

---

[6] "Under the FHAA, 'handicap' means 'a physical or mental impairment which substantially limits one or more of [a] person's major life activities.'"  *431 E. Palisade Ave. Real Estate, LLC v. City of Englewood*, 977 F.3d 277, 284 (3d Cir. 2020) (quoting 42 U.S.C. § 3602(h)(1)) (alteration in original).  With respect to disability discrimination under § 3604(f), a plaintiff "may bring three general types of claims: (1) intentional discrimination claims (also called disparate treatment claims) and (2) disparate impact claims, both of which arise under § 3604(f)(2), and (3) claims that a defendant refused to make 'reasonable accommodations,' which arise under § 3604(f)(3)(B)."  *Id.*  Wissman has not set forth sufficient facts to support any inference that she has a condition that qualifies as a handicap under the FHAA.

U.S. 474, 485 (1998)); *see also* 24 C.F.R. § 100.600.  A claim under § 3617 does not depend upon a substantive violation of the FHA.  *Revock*, 853 F.3d at 112.

Section 3617 also prohibits "retaliating against any person because that person reported a discriminatory housing practice to a housing provider or other authority."  *Id.* (citing 24 C.F.R. § 100.400(c)).  "To prevail on a § 3617 retaliation claim, a plaintiff must demonstrate that (1) she engaged in a protected activity; (2) the defendant subjected her to an adverse action; and (3) a causal link exists between the protected activity and the adverse action."  *Lloyd v. Presby's Inspired Life*, 251 F. Supp. 3d 891, 904 (E.D. Pa. 2017); *see also Davis v. Rubin*, 2022 WL 3037254, at *2 (3d Cir. Aug. 2, 2022) (citing 24 C.F.R. § 100.400(c)(6)) (evaluating an FHA retaliation claim and concluding that "filing a complaint with HUD may have been protected activity" under the FHA); *Norman v. Nw. Indiana CA Section 8*, No. 21-158, 2021 WL 4363012, at *4 (N.D. Ind. Sept. 24, 2021) (dismissing § 3617 retaliation claim on screening and finding, *inter alia*, that plaintiff failed to adequately allege that she engaged in a protected activity where she alleged retaliation based on "speaking out against" paying rent), *reconsideration denied*, No. 21-158, 2021 WL 4516790 (N.D. Ind. Oct. 1, 2021), *and reconsideration denied*, No. 21-158, 2021 WL 4860858 (N.D. Ind. Oct. 19, 2021); *Kris v. Dusseault Fam. Revocable Tr. of 2017*, No. 18-566, 2019 WL 4647211, at *5 (D.N.H. Sept. 24, 2019) (explaining that "'protected activity' includes the filing of complaints with federal or local housing authorities, or even less formal means of protest, so long as the complaint is related to unlawful discrimination . . . [b]ut complaints to HUD or the local housing authority about general conditions of the apartment or mismanagement of the apartment complex are not"); *Riley v. City of Kokomo*, 909 F.3d 182, 192 (7th Cir. 2018) (telephone call to HUD reporting mismanagement was not protected activity

because it was unreasonable to infer from the statement that plaintiff reasonably believed she was reporting a discriminatory housing practice).

While it is clear that Wissman seeks to present claims pursuant to the FHA, the rambling nature of her allegations make it difficult to discern the true basis of these claims.  Throughout her Complaint, Wissman repeatedly asserts that needed repairs were not performed to the property in violation of the FHA, and that she was evicted in violation of the FHA.  However, "[t]he Fair Housing Act does not . . . create some general federal cause of action governing landlord-tenant disputes.  It is not enough for a plaintiff to merely describe a series of housing maintenance concerns in her complaint to state a claim under the FHA.  Instead, the plaintiff must plead some facts that plausibly link these housing maintenance concerns or dissatisfaction with landlord-tenant proceedings" to discrimination on the basis of race, color, religion, sex, familial status, or national origin.[7]  *Palencar v. Raijski*, No. 15-1189, 2016 WL 6908116, at *5 (M.D. Pa. Nov. 9, 2016) (internal quotations, alterations and citations omitted), *report and recommendation adopted*, No. 15-1189, 2016 WL 6892841 (M.D. Pa. Nov. 23, 2016).  Wissman does not tie her allegations to her membership in a protected class, much less adequately allege sufficient facts from which one could infer that any Defendant intentionally discriminated against Wissman in that some discriminatory purpose was a motivating factor behind the challenged actions, or that any Defendant's actions or practices disproportionately burdened a protected class of which Wissman is a member, so as to cause a disparate impact.  *See Wilson v. Hillsborough Twp. Constr. Dep't*, 779 F. App'x 969, 972 (3d Cir. 2019) (*per curiam*) ("[E]ven if

---

[7] The Court notes that allegations of discrimination based on status as a Section 8 voucher holder fail to state a claim.  *See Dejesus*, 2021 WL 1546228, at *5 (allegations of discrimination based solely on status as a Section 8 voucher holder, and not based on membership in a statutorily protected class, fail).

Wilson could bring a claim under the FHA for defendants' licensing, inspection, and tax assessment decisions, her vague, conclusory speculations that those decisions were made for a discriminatory reason are insufficient to state a claim under the FHA."); *White*, 767 F. App'x at 334-35 (affirming dismissal of FHA claim and explaining that "it is not enough for White to merely allege a constitutional violation and state that Appellees discriminated against him; rather, White needed to elaborate and point to any context plausibly suggesting race discrimination. . . ."); *Jones v. 1260 Hous. Dev. Corp.*, No. 18-1420, 2018 WL 1757605, at *3 (E.D. Pa. Apr. 11, 2018) (dismissing FHA claim as conclusory); *Palencar*, 2016 WL 6908116, at *5 (finding that general claims regarding building maintenance failed to state an intentional discrimination claim under the FHA and were potentially actionable simply as a landlord tenant dispute under state law).

The Court understands Wissman to attempt to pursue claims under § 3617 based on sexual harassment by Defendants Edwards and Kates. She claims that Defendant Joe Edwards entered her apartment unannounced on November 3, 2022 to make repairs, gave Wissman his phone number, and asked personal questions of Wissman. (Compl. at 4-5, 21-22.) She claims he arrived the next day at the dwelling, but drove away when Wissman did not acknowledge him. (*Id.* at 22.) Edwards is also alleged to have entered Wissman's dwelling unannounced on December 10, 2022, unsuccessfully attempted to fix her dryer, and asked more personal questions of Wissman. (*Id.* at 23.) With respect to Defendant Kates, Wissman alleges that he acted inappropriately when she was introduced to him on March 22, 2023, "speaking her seductive, completely inappropriate" and asked for her phone number. (*Id.* at 19-20.) She also appears to claim that for a year prior to that, Defendant Kates stalked her by parking his truck directly across her kitchen window, drinking beers inside his vehicle, and waving at Wissman.

(*Id.* at 26-27, 34.)  Wissman's allegations of harassment by Edwards, including that he acted like a "sugar daddy" and that Kates evicted her and "then wants play Romeo in [a] subtle way," (*see id.* at 4, 39), do not plausibly allege that the alleged harassment was sufficiently severe or pervasive as to create a hostile environment.  *See Moran v. Rockwell Dev. Grp., LLC*, No. 21-3327, 2022 WL 866677, at *7 (E.D. Pa. Mar. 23, 2022) (denying motion to dismiss harassment claim where plaintiffs described specific instances of harassment, including that some of defendants' employees made uninvited advances such as asking plaintiffs on dates, commenting on their appearances, touching their shoulders and lower back, texting them about having drinks, and inviting themselves into plaintiffs' homes with alcohol, and that these advances were all made throughout their business relationship with defendants, such that plaintiffs argued that they did not want to offend the harassing employees because they were worried it would result in further delays or problems with their homes).[8]

To the extent that Wissman seeks to pursue a retaliation claim under § 3617 against PGM because she made verbal complaints regarding the lack of repairs, such claim is not plausible as pled.  Wissman simply alleges that she made "verbal complaints" regarding needed repairs, but her requests went unheeded.  (*See, e.g.,* Compl. at 4, 35.)  The conclusory allegations in the Complaint do not sufficiently link a protected activity to any adverse action.  *See Davis v. Rubin*, No. 20-6271, 2020 WL 7624833, at *3 (E.D. Pa. Dec. 22, 2020) (dismissing FHA retaliation claim on screening where plaintiff did not allege a protected activity involving complaints about discrimination); *El v. People's Emergency Ctr.*, 315 F. Supp. 3d 837, 842 n.40 (E.D. Pa. 2018)

---

[8] Wissman also alleges that Jason Santora and John Doe entered her dwelling unannounced and took pictures of areas in need of repair, but did not perform any repairs.  (*See* Compl. at 4, 24-25.)  The Court does not understand these allegations to be tied to a claim of sexual harassment under the FHA.

(dismissing retaliation claim because plaintiff failed to allege that he engaged in a protected activity such as filing a complaint with the Department of Housing and Urban Development).

While Wissman extensively references the FHA in her Complaint, her vague and disjointed allegations fall short of stating any plausible FHA claim.  *See Iqbal*, 556 U.S. at 678 ("Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief." (internal quotations omitted)); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ("Because the plaintiffs here have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed.").  Accordingly, Wissman's FHA claims will be dismissed without prejudice.

### C.    Claims Based on the Americans with Disabilities Act

Wissman seeks to assert a claim under Title II of the ADA.  (Compl. at 1, 42.)  Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.  To state a claim under Title II of the ADA, a plaintiff must allege that: "(1) [s]he is a qualified individual; (2) with a disability; (3) who was excluded from participation in or denied the benefits of the services, programs, or activities of a public entity, or was subjected to discrimination by any such entity; (4) by reason of [her] disability."  *Geness v. Cox*, 902 F.3d 344, 361 (3d Cir. 2018) (citations omitted).  To allege that she is a "qualified individual with a disability," Wissman must allege that she has a "disability" which is defined as "a physical or mental impairment that substantially limits one or more major life activities of such individual. . . ."  42 U.S.C. § 12102(1)(A).  "[M]ajor life activities include, but are not limited to,

caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." *Id.* at § 12101(2)(A).  Title II applies only to "any State or local government," "any department, agency, special purpose district, or other instrumentality of a State or States or local government," and "the National Railroad Passenger Corporation, and any commuter authority." *Id.* at § 12131(1).

Here, Wissman has not plausibly alleged a claim under Title II of the ADA.  Wissman has not plausibly alleged that she is a qualified individual with a disability, much less that she was subject to discrimination by reason of a disability.  Additionally, Wissman has not alleged discrimination by a "public entity."  Nothing in the Complaint supports a reasonable inference that PGM is a public entity.  *See, e.g., El*, 315 F. Supp. 3d at 843-44 (dismissing Title II ADA claim for plaintiff's failure to allege discrimination by a public entity); *see also Boggi v. Med. Review & Accrediting Council*, 415 F. App'x 411, 414-15 (3d Cir. 2011) (*per curiam*) (holding that plaintiff failed to state a viable ADA claim against any of the "non-entity defendants" that were sued in their individual capacities).  Accordingly, Wissman's claims under Title II of the ADA will be dismissed without prejudice.

### D.    State Law Claims

Wissman also seeks to assert various state law claims, including claims under Pennsylvania's Unfair Trade Practices and Consumer Protection Law, Fair Credit Extension Uniformity Act, and Landlord-Tenant Act of 1951, as well as claims for a violation of the implied covenant of quiet enjoyment and intentional infliction of emotional distress.  (*See* Compl. at 40-42.)  The only independent basis for jurisdiction over any such claims is 28 U.S.C. § 1332(a), which grants a district court jurisdiction over a case in which "the matter in

controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between

. . . citizens of different States."[9]

Section 1332(a) requires "'complete diversity between all plaintiffs and all defendants,'"

which "means that, unless there is some other basis for jurisdiction, 'no plaintiff [may] be a

citizen of the same state as any defendant.'" *Lincoln Ben. Life Co.*, 800 F.3d 99, 104 (3d Cir.

2015) (quoting *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (2005) and *Zambelli Fireworks Mfg.*

*Co. v. Wood*, 592 F.3d 412, 419 (3d Cir. 2010)).  An individual is a citizen of the state where he

is domiciled, meaning the state where he is physically present and intends to remain.  *See*

*Washington v. Hovensa*, LLC, 652 F.3d 340, 344 (3d Cir. 2011).  Wissman and at least some of

the Defendants[10] are citizens of Pennsylvania such that diversity jurisdiction does not exist over

Wissman's state law claims.  Accordingly, any state law claims will be dismissed without

prejudice for lack of subject matter jurisdiction.

## IV.   CONCLUSION

For the foregoing reasons, the Court will grant Wissman leave to proceed *in forma*

*pauperis*, dismiss her federal claims without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii)

for failure to state a claim, and dismiss any state law claims for lack of subject matter

jurisdiction.  Considering Wissman's *pro se* status, she will be permitted an opportunity to file an

---

[9] Because the Court has dismissed Wissman's federal claims, it will not exercise supplemental jurisdiction over any state law claims. If she alleges valid federal claims, the court will consider whether to exercise supplemental jurisdiction over viable state claims under 28 U.S.C. § 1367.

[10] For example, Wissman alleges that Defendant Kates resides at 715 Strickersville Road, where he has lived in the apartment below Wissman since November 2021 with his wife and children. (*See* Compl. at 9, 26, 34.)

amended complaint if she believes she can cure the defects the Court has noted as to her claims.

An appropriate Order follows, which provides further instruction on amendment.